

**U.S. Department of Justice**

*United States Attorney*

*District of Maryland*

Judson T. Mihok
Assistant United States Attorney
judson.mihok@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4903
MAIN: 410-209-4800
FAX: 410-962-0716

April 3, 2015

Mr. Patrick Kent
Office of the Federal Public Defender
  for the District of Maryland
100 South Charles Street
Tower II, Suite 1100
Baltimore, MD 21201

Re:   United States v. Kevin Johnson, Crim. No. JFM-14-0599

Dear Mr. Kent:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by **April 16, 2015**, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1.  The Defendant agrees to plead guilty to the Indictment currently pending against him, which charges him with Escape, in violation of Title 18 U.S.C. § 751(a). The Defendant admits that he is, in fact, guilty of these offenses and will so advise the Court.

### Elements of the Offense

2.  The elements of the offenses to which the Defendant has agreed to plead guilty, and which the Government would prove if the case went to trial are as follows:

On or about the date charged in the Indictment, the Defendant did:

First, escape;

Second, from the custody of the Attorney General, or confinement in an institution where the prisoner was confined by the direction of the Attorney General; and

1

Third, when such custody or confinement was pursuant to a judgment of conviction or other process issued under the laws of the United States.

## Penalties

3. The maximum sentence provided by statute for the offenses to which the Defendant is pleading guilty are as follows: a maximum sentence of five years (5) years imprisonment; a $250,000 fine; and a period of supervised release of up to three (3) years. In addition, the Defendant must pay $100.00 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

      a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

      b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. The Defendant and this Office would have the opportunity to strike prospective jurors who demonstrated bias or who were otherwise unqualified, and both sides would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

      c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

2

have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

      d.  The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

      e.  If the Defendant was found guilty after a trial, he would have the right to appeal the verdict to see if any errors were committed which would require a new trial or dismissal of the charges against him.

      f.  By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

      g.  If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

      h.  By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

  5.  The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A, which would be proved beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

### Guideline Stipulation

a. The parties stipulate and agree that the base offense level for Count One is eight (8). U.S.S.G. §2P1.1(a)(2).

### Relevant Conduct-Attempted Bank Robbery

b. The parties stipulate and agree that the base offense level will also include the Attempted Bank Robbery of the M&T Bank on Howard Street, Baltimore, MD, on August 18, 2014.

c. Pursuant to U.S.S.G. §2B3.1(a), the base offense level is 20.

d. Pursuant to U.S.S.G. §2B3.1(b)(1), the property of a financial institution was the subject of the attempt, so two (2) levels are added.

### Multiple Counts Calculation

e. Pursuant to U.S.S.G. §3D1.2, the above-described conduct does not group. However, since the adjusted offense level for the lowest offense level (Escape, level 8) is more than nine (9) levels below the offense conduct for the higher adjusted offense level (Attempted Bank Robbery, level 22), there is no additional increase. U.S.S.G. §§ 3D1.3, 1.4. Therefore, the base offense level is the adjusted base offense level for the higher offense conduct, that is, twenty-two (22).

e. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level for Count One, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for her criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. §3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about her involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

**Therefore, the anticipated final adjusted offense level is nineteen (19).**

4

7. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

## Obligations of the United States Attorney's Office

9. At the time of sentencing, this Office will recommend a sentence of between forty-eight (48) months and sixty (60) months and a period of supervised release consistent with Paragraph 11.

10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct. Should the defendant choose to file a sentencing memorandum in this matter, the defendant agrees to file any such memorandum ten business days prior to the date of sentencing.

## Rule 11 (c) (1) (C) Plea

11. The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of between forty-eight (48) months and sixty (60) months in the Bureau of Prisons is the appropriate disposition of this case. For the purposes of this agreement, incarceration is a sentence to the Bureau of Prisons, and does not include any form of home confinement. This agreement does not affect the Court's discretion to impose any lawful conditions of supervised release. In the event that the Court rejects this plea agreement, either party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).

## Waiver of Appeal

12. The Defendant and this Office knowingly and expressly waive all rights conferred by 28 U.S.C. § 1291 to appeal the conviction and 18 U.S.C. § 3742 to appeal the sentence provided it is within the range indicated in paragraph 11 (48 months to 60 months), as well as whatever period of supervised release, fine or order of restitution that may be imposed, and any issues that relate to the establishment of the advisory guidelines range. Nothing in this agreement shall be construed to prevent either the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), and appealing from any decision thereunder, should a sentence be imposed that is illegal or that exceeds the statutory maximum allowed under the law or that is less than any applicable statutory mandatory minimum

5

provision. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Court Not a Party

13. The Defendant expressly understands that the Court is not a party to this agreement. The Defendant understands that the Court is under no obligation to accept this plea offer made pursuant to Rule 11(c)(1)(C). The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Forfeiture

14. The Defendant understands that the Court will, upon acceptance of his guilty plea, enter an order of forfeiture as part of his sentence, and that the order of forfeiture may include assets directly traceable to his offenses, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense. Specifically, the Court will order the forfeiture of all property constituting, derived from, or traceable to the gross proceeds obtained directly or indirectly as a result of this offense. The Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The Defendant and the Government agree that it may be necessary for the Court to make a factual determination regarding the amount of the money judgment and/or the forfeiture of certain assets. To the extent that it is not possible for the Court to make that determination prior to the date of sentencing, the Defendant agrees to waive any right he may have to have the forfeiture determined at that time, and agrees that the Court may make any necessary factual determination in a post-sentencing proceeding, and may amend the order of forfeiture and the judgment to include the forfeited property at that time.

### Assisting the Government with Regard to the Forfeiture

15. The Defendant agrees to assist fully in the forfeiture of the foregoing assets. The Defendant agrees to disclose all of his assets and sources of income to the United States, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including but not limited to executing any and all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. The Defendant further agrees that he will not assist any third party in asserting a claim to the forfeited assets in an ancillary proceeding and that he will testify truthfully in any such proceeding.

### Waiver of Further Review of Forfeiture

16.     The Defendant further agrees to waive all constitutional, legal and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The Defendant also agrees not to challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this agreement, and will not assist any third party with regard to such challenges or review or with regard to the filing of a petition for remission of forfeiture.

### Restitution

17.     The Defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and §§ 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

### Collection of Financial Obligations

18.     The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. The Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

### Obstruction or Other Violations of Law

19.     The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would

7

justify a finding of obstruction of justice under U.S.S.G. §3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw his guilty plea or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Entire Agreement

20. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Addendum, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and addendum and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this letter, please sign and have the Defendant sign the original and return it to me promptly.

Rod J. Rosenstein
United States Attorney

By: _____
Judson T. Mihok
Assistant United States Attorney

8

I have read this agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I understand this plea agreement, and I voluntarily agree to it. I am completely satisfied with the representation of my attorney.

4-14-15
Date

Kevin Johnson

I am Mr. Johnson's attorney. I have carefully reviewed every part of this agreement with her. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

4-14-15
Date

Patrick Kent, Esq.

9

## ATTACHMENT A-STATEMENT OF FACTS

*The undersigned parties hereby stipulate and agree that if this case had proceeded to trial the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Kevin Johnson, 34, is a resident of Baltimore, MD.

On June 11, 2010, Kevin JOHNSON was sentenced in federal court to 64 months in the custody of the Bureau of Prisons, to be followed by three years of supervised release, based on his plea of guilty for Mailing a Threatening Communication, in violation of 18 U.S.C. § 876(c). The factual basis of JOHNSON's plea agreement, which he signed and acknowledged as true under oath, indicated the following:

That on or about February 11, 2009, the Defendant addressed an envelope to: United States District Court, 101 West Lombard Street, Baltimore, MD 21201, ATT: The Honorable Roger W. Titus. The Defendant placed this envelope into the mail stream intending that it would be delivered by the U.S. Postal Service to Judge Roger W. Titus. The envelope is post marked February 11, 2009.

The envelope was received at the U.S. Federal Courthouse in Baltimore, Maryland, where it was intercepted by the U.S. Marshal's Service. Inside the envelope was a letter which read:

> Dear Judge Titus,
> This is Kevin Johnson #329397. You have presided over 3 § 1983 complaints of mine: RWT-06-3076, RWT-08-1148 and RWT-08-1580. All these cases have something to do with my life being in danger. Since you dismissed all of the aforementioned cases I feel as though you are playing with my life. Since you want to play w/ my life, bitch Im gonna take yours! When I come home, (which won't be to much longer since I go up for parole in July) I'm gonna come to the courthouse and wait for your heartless ass in the parking lot and when I see you (I know exactly what you look like) Im going to put a few hot ones up your Ass! By the way this is NOT a threat. Mother Fucker, ITS A FUCKING PROMISE!!!
> See you soon BITCH!

Looking forward to watching you die,
[signed Kevin Johnson] 329397
13800 McMullen Hwy SW
Cumberland MD 21502

The letter caused Judge Roger W. Titus to feel threatened. At the time the letter was mailed, JOHNSON was serving a sentence at the Western Correctional Institution in Cumberland, Maryland, and assigned inmate identification number 329397.

On March 5, 2009, after being advised of, and knowingly and voluntarily waiving, his Miranda rights, the Defendant acknowledged writing the letter. The Defendant stated, in sum and substance, that: he would probably follow through with his threats if given the opportunity because he was very upset with Judge Titus; by "a few hot ones" he meant bullets; he had the ability to get a gun; he used to own a gun; he was very distraught at the lack of resolution of his civil case (which had been dismissed by Judge Titus); he "snapped" when his civil suit was dismissed; he was a ticking time bomb ready to explode; he knew what he did was wrong; and he was willing to face the consequences.

Based on JOHNSON's sentence, he had a projected release date of February 1, 2015. On August 6, 2014, at 1:40 a.m., JOHNSON departed United States Penitentiary McCreary in Pine Knot, Kentucky, with the town driver and proceeded to the bus station in nearby London, Kentucky, with instructions that he get on the bus to Baltimore, MD, and then check himself into Volunteers of America (VOA). VOA is a residential re-entry program where JOHNSON was to serve the last six months of his sentence. At that time JOHNSON was considered on furlough and still under the custody of the Attorney General or his authorized representative. JOHNSON was directed to arrive at VOA in Baltimore, MD, no later than 10:40 p.m. on August 6, 2014.

On August 7, 2014, USP McCreary officials were notified by VOA that JOHNSON never reported. Unit Staff for USP McCreary contacted the Greyhound Bus Station and confirmed that there were no interruptions with the scheduled route to Baltimore, MD.

Review of surveillance camera footage showed JOHNSON as he exited the bus/bus terminal JOHNSON, having arrived in Baltimore, MD, on August 6, 2014, at approximately 11:15 p.m.. Thereafter, JOHNSON made no effort to contact Bureau of Prisons Officials or the U.S. Marshal's Service.

Further investigation showed that on August 18, 2014, at approximately 1:29 p.m., JOHNSON entered the M&T Bank located at 715 North Howard Street, Baltimore, Maryland, and approached teller window number one. JOHNSON handed the teller a note written on a bank deposit slip which demanded money. The teller took the note and realized that it was a bank robbery demand note; from behind the protective glass, the teller shook her head no, and passed the note back to JOHNSON. JOHNSON took the note and left the bank.

On August 20, 2014, JOHNSON was located and arrested at Sinai Hospital where he had voluntarily checked himself in seeking mental health services on August 19, 2014.

I have read this statement of facts, and carefully reviewed it with my attorney. I acknowledge that it is true and correct.

_____  
Kevin Johnson

_____  
Patrick Kent, Esq.  
Counsel for Johnson

4-14-15  
Date

5-7-15  
Date

3